David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorney for Plaintiff
*MICHELLE M. FUNG*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| MICHELLE M. FUNG,<br><br>Plaintiff,<br><br>v.<br><br>CONCORD SERVICING, CORP; FIA CARD SERVICES, NATIONAL ASSOCIATION; EQUIFAX INFORMATION SERVICES, LLC,<br><br>Defendants. | Civil Action No.:<br><br>**COMPLAINT FOR DAMAGES PURSUANT TO THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |

### INTRODUCTION

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to insure fair and accurate

reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2.  MICHELLE M. FUNG ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of CONCORD SERVICING, CORP ("CONCORD"), FIA CARD SERVICES, NATIONAL ASSOCIATION ("FIA"), AND EQUIFAX INFORMATION SERVICES, LLC ("Equifax") (or jointly as "Defendants") with regard to erroneously reporting derogatory credit information to national reporting agencies.

3.  Defendants failed to properly investigate Plaintiff's disputes, damaging Plaintiff's creditworthiness.

## JURISDICTION AND VENUE

4.  This Court has federal question jurisdiction because this case arises out of violation of federal law. 15 U.S.C. §1681 *et seq.*; 28 U.S.C. §1331; *Smith v. Community Lending, Inc.*, 773 F.Supp.2d 941, 946 (D. Nev. 2011).

5.  This action arises out of each Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681(x) ("FCRA").

6.  Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Clark County, the State of Nevada and because Defendants are subject to personal jurisdiction in the County of Clark, State of Nevada as they conduct business there. Venue is also proper because, the conduct giving rise to this action occurred in Nevada. 28 U.S.C. § 1391(b)(2). Further, Equifax has a registered agent of service in Nevada and is listed with the Nevada Secretary of State as a foreign limited liability company doing business in Nevada.

## PARTIES

7.  Plaintiff is a natural person residing in the County of Clark, State of Nevada. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

8.  Defendant CONCORD is a corporation doing business in the State of Nevada.

9.  Defendant CONCORD is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

10. Defendant FIA is a corporation doing business in the State of Nevada.

11. Defendant FIA is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

12. Defendant Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports. Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f), doing business with its principal place of business in Georgia.

13. Unless otherwise indicated, the use of Defendants' name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants' named.

## GENERAL ALLEGATIONS

14. On or about 10/09/2014, Plaintiff filed for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the District of Nevada. Plaintiff's case was assigned Case Number 14-16781-mkn (the "Chapter 7" or "Bankruptcy").

15. The obligations ("Debt") to each Defendant herein (as applicable) were scheduled in the Bankruptcy and each respective creditor-Defendant, or its predecessor in interest, received notice of the Bankruptcy.

16. None of the Defendants named herein filed any proceedings to declare their alleged debts "non-dischargeable" pursuant to 11 U.S.C. § 523 *et seq*.

17. None of the Defendants named herein obtained relief from the "automatic stay" codified at 11 U.S.C. §362 *et seq.* while the Plaintiff's Bankruptcy was pending to pursue the Plaintiff for any *personal* liability.

18. Accordingly, the debts to each Defendant named herein (as applicable) were discharged through the Bankruptcy on 1/14/2015.

19. Further, while the automatic stay was in effect during the Bankruptcy, it was illegal and inaccurate for any of the creditor-defendants to report any post-Bankruptcy derogatory collection information, which was inconsistent with the Orders entered by the Bankruptcy Court.

20. However, Defendants named herein, and each of them, either reported or caused to be reported inaccurate information after the Bankruptcy as discussed herein.

21. Defendant's reporting post-Bankruptcy derogatory information was inaccurate and misleading in that each Defendant continued reporting information based on Defendant's pre-bankruptcy contract terms with the Plaintiff, which were no longer enforceable upon the bankruptcy filing, thereby rendering the disputed information "inaccurate".

22. Additionally, Defendant's inaccurate reporting did not comply with the Consumer Data Industry Association's Metro 2 reporting standards, which provides guidance for credit reporting and FCRA compliance.

23. To help furnishers comply with their requirements under the FCRA, the Consumer Data Industry Association ("CDIA") publishes standard guidelines for reporting data called the "Metro 2 Format."

24. Notably, the payment history and account status guidelines are the same, meaning that the "payment history" and "account status" should be reported the same way both during and after a bankruptcy proceeding. *Id.*

25. The only difference in reporting a pre-discharged debt and a discharged debt is to delete the balance (or report a balance of $0). *Id.*

26. Indeed, the guidelines direct furnishers to report an account status as it existed at the time the bankruptcy petition was filed and not the account status as it *would have* existed in the months following the filing of the petition if the petition had not been filed. *Id.*

27. Courts rely on such guidance to determine furnisher liability. *See e.g. In re Helmes*, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005) (finding that "industry standards require that a debt discharged in bankruptcy be reported to a credit reporting agency with the notation `Discharged in bankruptcy' and with a zero balance due").

28. Defendants did not conform to the Metro 2 Format when reporting on Plaintiff's accounts after the Plaintiff filed Bankruptcy as further set forth below. To this end, the adverse reporting on the Plaintiff's report departs from the credit industry's own reporting standards and was therefore inaccurate under the CDIA's standards as well.

## THE EQUIFAX VIOLATIONS

### Equifax Failed to Investigate or Notify Furnisher of the Dispute

### CAPITAL Account No. 2000

29. In an Equifax credit report dated June 5, 2015, CAPITAL reported the following inaccurate, derogatory information. Specifically, CAPITAL inaccurately reported that the Plaintiff's "Date Major Delinquency 1st Reported" (hereinafter "DLA") was March 2015, when the Plaintiff filed Bankruptcy on 10/09/2014. *See* a true and correct redacted copy attached hereto as **"Exhibit 1"**. The DLA date should have been no later than the Bankruptcy filing date. By reporting a DLA later than the Bankruptcy filing date CAPITAL caused the DLA to remain on the Plaintiff's credit reported longer than allowed under the FCRA's obsolescence period codified at 15 U.S.C. § 1681c(a). CAPITAL's "re-aging" of its debt is illegally causing the trade line to remain on the Plaintiff's credit report longer than legally permissible.

30. On or about July 21, 2015 Plaintiff disputed CAPITAL's reported information regarding its reported obligation pursuant to 15 U.S.C. § 1681i(a)(2) by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by CAPITAL. *Id.*

31. Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax (the "Equifax Dispute Letter"), requesting the above inaccurate and incorrect derogatory information be removed, corrected or deleted. *See* Equifax Dispute Letter, attached hereto as **"Exhibit 2"**.

32. The Equifax Dispute Letter further requested that Equifax:

- Immediately delete this account and the disputed derogatory information from my [Plaintiff's] credit report.

- The discharged debt should be reported with an account balance of $0 with a status of "current".

- Further, there should be no post-bankruptcy activity reported on this account. The date of last activity on this account should pre-date my bankruptcy filing date, 10/09/2014, since a default on this account occurred no later than the Bankruptcy filing date.

- Any post-bankruptcy derogatory information should be immediately deleted from my report.

- If you do not immediately delete this from my credit report, please include a 100-word statement in my credit report of all of the disputed information contained in this letter regarding this account.

33. Plaintiff never received notification from Equifax of a "reinvestigation"; therefore, the reinvestigation report failed to address the dispute regarding the CAPITAL account.

34. Upon information and belief, Equifax did not notify CAPITAL of Plaintiff's dispute and therefore CAPITAL continued reporting derogatory information.

35. Equifax was required to conduct a reinvestigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

36. Equifax failed to conduct a reasonable investigation and wrongly verified inaccurate information in connection with Plaintiff's credit reports. *Id.*

37. Upon information and belief, CAPITAL and Equifax continue to report the inaccurate derogatory information on Plaintiff's report.  Specifically, CAPITAL and Equifax continue to inaccurately report that the Plaintiff's DLA was March 2015, when the Plaintiff filed Bankruptcy on 10/09/2014.

38. The false and inaccurate information was and continues to be furnished by Defendants.

39. Equifax, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.SC. § 1681i(a)(1)(A).

40. Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B).

41. Due to Equifax's failure to reasonably investigate Plaintiff's dispute, CAPITAL and Equifax each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C).

42. Plaintiff's continued efforts to correct CAPITAL's and Equifax's erroneous and negative reporting of the discharged debt by communicating Plaintiff's dispute with Equifax was fruitless.

43. Equifax's continued inaccurate and negative reporting of the discharged debt in light of its knowledge of the actual error was willful.

44. Equifax's inaccurate and negative reporting damaged Plaintiff's creditworthiness.

45. By inaccurately reporting account information relating to the discharged debt after notice and confirmation of its errors, Equifax failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E).

**CONCORD Impermissibly Pulled Plaintiff's Credit Information**

46. Plaintiff is informed and believes, and thereon alleges, that CONCORD acquired Plaintiff's credit information through an unauthorized inquiry of Plaintiff's "consumer report" as that term is defined by 15 U.S.C. 1681a(d)(1).

47. Upon review of Plaintiff's TransUnion credit report dated July 13, 2015, Plaintiff discovered that CONCORD submitted unauthorized credit report inquiries for account reviews to TransUnion after the Debt to CONCORD had been discharged.

48. Specifically, CONCORD submitted inquiries for the purpose of collection or account review on May 26, 2015.

49. However, 15 U.S.C. §1681b delineates the *only* permissible uses of, or access to, consumer reports.

50. CONCORD had no permissible use of or access to Plaintiff's consumer reports.

51. CONCORD's inquiry of Plaintiff's consumer report information for the purpose of collection or account review, without Plaintiff's consent and after the Debt had been discharged in Bankruptcy, falls outside the scope of any permissible use or access included in 15 U.S.C. § 1681b.

52. Plaintiff had no account or business transaction with CONCORD at the time CONCORD requested Plaintiff's credit information since the debt to CONCORD had been extinguished through Plaintiff's bankruptcy discharge.

53. CONCORD should not have submitted a credit report inquiry after January 14, 2015, because Plaintiff received a Bankruptcy discharge on January 14, 2015.

54. Because Plaintiff had discharged all debts owed to CONCORD in the bankruptcy proceeding and had no other account relationship with CONCORD, CONCORD had no legitimate business need for the information.

55. CONCORD accessed Plaintiff's credit report without consent or knowledge of Plaintiff.

56. Obtaining a report without a permissible purpose constitutes an invasion of a legally protected interest in the confidentiality of the Plaintiff's sensitive personal information. The harm may be intangible, but is it is very real and concrete.

57. The prohibition on impermissible credit "pulls" is also a substantive provision, not procedural, in that it is a direct protection for the privacy of the Plaintiff's information.

58. Accessing a consumer report without a permissible purpose would be similar to several common law torts that fall under the umbrella of invasion of

privacy, such as the public disclosure of private facts or intrusion upon seclusion (in this case, intrusion on financial information).

59. CONCORD never notified Plaintiff of the illegal and impermissible access.

60. CONCORD obtained Plaintiff's credit report and/or credit information under false pretenses by falsely representing that the purpose of such access was for collection or account review notwithstanding that the account no longer existed.

61. CONCORD continued to have knowledge that that the discharge order means that the Debt is no longer collectible. However, CONCORD decided to access Plaintiff's credit information illegally.

62. CONCORD had no legitimate business need for Plaintiff's credit report. Any debtor-creditor relationship that Plaintiff had with CONCORD was terminated upon Plaintiff's Bankruptcy discharge.

63. CONCORD willfully and negligently violated the Fair Credit Reporting Act through its above conduct.

64. Specifically, CONCORD violated 15 U.S.C. § 1681b by using Plaintiff's consumer report for an impermissible use that falls outside the scope of 15 U.S.C. § 1681b.

65. Defendant's actions were willful under 15 U.S.C. §§ 1681n because Defendant was aware of the FCRA's prohibitions on impermissibly pulling

consumers' credit reports. *See Doe v. Sentech Employment Services, Inc.*, E.D. Mich. May 16, 2016) (*citing Singleton v. Domino's Pizza, LLC*, 2012 WL 245965, *4 (D. Md. Jan. 25, 2012) ("[A]ssertions that a defendant is aware of the FCRA, but failed to comply with its requirements, are sufficient to support an allegation of willfulness and to avoid dismissal.").

66. Plaintiff suffered an invasion of a legally protected interest when Defendant accessed the Plaintiff's highly confidential personal information on the Plaintiff's credit report at a time when Defendant had no right to do so, an invasion of Plaintiff's right to privacy. The FCRA, through 15 U.S.C. § 1681b, protects consumers like Plaintiff from this precise behavior.

67. Plaintiff has a common law right to keep personal credit information private. *E.g.*, Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 1155, 193 (1890). Congress sought to further protect that right by enacting the FCRA. Indeed, the common law tort of intrusion upon seclusion is preempted by the FCRA, and the FCRA expressly provides that Congress made the following finding: "There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality and a respect for the consumer's right to privacy." 15 U.S.C. §1681a(4).

68. Plaintiff was affected personally because when the Plaintiff's realized the behavior of Defendant described above (pulling the Plaintiff's credit report

without any authorization), Plaintiff felt that the Plaintiff's privacy was invaded and that the Plaintiff's personal and private information was disclosed to Defendant, who had no right to Plaintiff's private information.

69. The injury suffered by Plaintiff is concrete because Defendant's violation of 15 U.S.C. § 1681b caused Plaintiff to suffer an invasion of privacy. In enacting 15 U.S.C. § 1681b, Congress specifically sought to protect consumers from invasions of privacy and created restrictions on access to consumers' sensitive financial information in their credit reports.

70. Further, Defendant increased the risk that Plaintiff will be injured if there is a data breach on Defendant's computer systems by acquiring additional highly sensitive information about Plaintiff and saving that information onto its computer system. Data breaches are increasingly common (see, e.g., Data Breaches, Kerbs, available at http://krebsonsecurity.com/category/data-breaches/), and financial institutions like Defendant are frequent targets of cybercriminals (see, e.g., The Top 8 Largest Date Breaches in the Financial Services Industry, Association of Certified Financial Crime Specialists, available at http://www.acfcs.org/the-top-8-largest-data-breaches-in-the-financial-services-industry/).

71. As such, Plaintiff is entitled to the remedies available under 15 U.S.C. §1681n and 15 U.S.C. § 1681o.

## FIA Impermissibly Pulled Plaintiff's Credit Information

72. Plaintiff is informed and believes, and thereon alleges, that FIA acquired Plaintiff's credit information through an unauthorized inquiry of Plaintiff's "consumer report" as that term is defined by 15 U.S.C. 1681a(d)(1).

73. Upon review of Plaintiff's TransUnion credit report dated July 13, 2015, Plaintiff discovered that FIA submitted unauthorized credit report inquiries for account reviews to TransUnion after the Debt to FIA had been discharged.

74. Specifically, FIA submitted inquiries for the purpose of collection or account review on February 23, 2015.

75. However, 15 U.S.C. §1681b delineates the *only* permissible uses of, or access to, consumer reports.

76. FIA had no permissible use of or access to Plaintiff's consumer reports.

77. FIA's inquiry of Plaintiff's consumer report information for the purpose of collection or account review, without Plaintiff's consent and after the Debt had been discharged in Bankruptcy, falls outside the scope of any permissible use or access included in 15 U.S.C. § 1681b.

78. Plaintiff had no account or business transaction with FIA at the time FIA requested Plaintiff's credit information since the debt to FIA had been extinguished through Plaintiff's bankruptcy discharge.

79. FIA should not have submitted a credit report inquiry after January 14, 2015, because Plaintiff received a Bankruptcy discharge on January 14, 2015.

80. Because Plaintiff had discharged all debts owed to FIA in the bankruptcy proceeding and had no other account relationship with FIA, FIA had no legitimate business need for the information.

81. FIA accessed Plaintiff's credit report without consent or knowledge of Plaintiff.

82. Obtaining a report without a permissible purpose constitutes an invasion of a legally protected interest in the confidentiality of the Plaintiff's sensitive personal information. The harm may be intangible, but is it is very real and concrete.

83. The prohibition on impermissible credit "pulls" is also a substantive provision, not procedural, in that it is a direct protection for the privacy of the Plaintiff's information.

84. Accessing a consumer report without a permissible purpose would be similar to several common law torts that fall under the umbrella of invasion of privacy, such as the public disclosure of private facts or intrusion upon seclusion (in this case, intrusion on financial information).

85. FIA never notified Plaintiff of the illegal and impermissible access.

86. FIA obtained Plaintiff's credit report and/or credit information under false pretenses by falsely representing that the purpose of such access was for collection or account review notwithstanding that the account no longer existed.

87. FIA continued to have knowledge that that the discharge order means that the Debt is no longer collectible. However, FIA decided to access Plaintiff's credit information illegally.

88. FIA had no legitimate business need for Plaintiff's credit report. Any debtor-creditor relationship that Plaintiff had with FIA was terminated upon Plaintiff's Bankruptcy discharge.

89. FIA willfully and negligently violated the Fair Credit Reporting Act through its above conduct.

90. Specifically, FIA violated 15 U.S.C. § 1681b by using Plaintiff's consumer report for an impermissible use that falls outside the scope of 15 U.S.C. § 1681b.

91. Defendant's actions were willful under 15 U.S.C. §§ 1681n because Defendant was aware of the FCRA's prohibitions on impermissibly pulling consumers' credit reports. *See Doe v. Sentech Employment Services, Inc.*, E.D. Mich. May 16, 2016) (*citing Singleton v. Domino's Pizza, LLC*, 2012 WL 245965, *4 (D. Md. Jan. 25, 2012) ("[A]ssertions that a defendant is

aware of the FCRA, but failed to comply with its requirements, are sufficient to support an allegation of willfulness and to avoid dismissal.").

92. Plaintiff suffered an invasion of a legally protected interest when Defendant accessed the Plaintiff's highly confidential personal information on the Plaintiff's credit report at a time when Defendant had no right to do so, an invasion of Plaintiff's right to privacy. The FCRA, through 15 U.S.C. § 1681b, protects consumers like Plaintiff from this precise behavior.

93. Plaintiff has a common law right to keep personal credit information private. *E.g.*, Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 1155, 193 (1890). Congress sought to further protect that right by enacting the FCRA. Indeed, the common law tort of intrusion upon seclusion is preempted by the FCRA, and the FCRA expressly provides that Congress made the following finding: "There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality and a respect for the consumer's right to privacy." 15 U.S.C. §1681a(4).

94. Plaintiff was affected personally because when the Plaintiff's realized the behavior of Defendant described above (pulling the Plaintiff's credit report without any authorization), Plaintiff felt that the Plaintiff's privacy was invaded and that the Plaintiff's personal and private information was disclosed to Defendant, who had no right to Plaintiff's private information.

95. The injury suffered by Plaintiff is concrete because Defendant's violation of 15 U.S.C. § 1681b caused Plaintiff to suffer an invasion of privacy. In enacting 15 U.S.C. § 1681b, Congress specifically sought to protect consumers from invasions of privacy and created restrictions on access to consumers' sensitive financial information in their credit reports.

96. Further, Defendant increased the risk that Plaintiff will be injured if there is a data breach on Defendant's computer systems by acquiring additional highly sensitive information about Plaintiff and saving that information onto its computer system. Data breaches are increasingly common (see, e.g., Data Breaches, Kerbs, available at http://krebsonsecurity.com/category/data-breaches/), and financial institutions like Defendant are frequent targets of cybercriminals (see, e.g., The Top 8 Largest Date Breaches in the Financial Services Industry, Association of Certified Financial Crime Specialists, available at http://www.acfcs.org/the-top-8-largest-data-breaches-in-the-financial-services-industry/).

97. As such, Plaintiff is entitled to the remedies available under 15 U.S.C. §1681n and 15 U.S.C. § 1681o.

///

### FIRST CAUSE OF ACTION
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681 *ET SEQ*. (FCRA)

98. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

99. The foregoing acts and omissions constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. §1681.

100. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

101. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendants.

### PRAYER FOR RELIEF

Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681 ET SEQ. (FCRA)**

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA; and

- any other relief the Court may deem just and proper.

...

...

...

...

...

...

...

## TRIAL BY JURY

102.     Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.


Dated: January 5, 2017

                                     Respectfully submitted,

                                     By  /s/ David H. Krieger, Esq.
                                     _____

                                     David H. Krieger, Esq.
                                     Nevada Bar No. 9086
                                     HAINES & KRIEGER, LLC
                                     8985 S. Eastern Ave., Suite 350
                                     Henderson, NV 89123
                                     Phone: (702) 880-5554
                                     FAX: (702) 385-5518
                                     Email: dkrieger@hainesandkrieger.com

                                     Attorney for Plaintiff
                                     *MICHELLE M. FUNG*